## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

ROBERTA APPELBAUM, individually, )
and as next friend of her minor son, D.A., )
)
      **Plaintiff,** )
)
  vs. )   Case number 4:07cv0261 TCM
)
**WENTZVILLE R-IV SCHOOL** )
**DISTRICT, et al.,** )
)
      **Defendants.** )

## MEMORANDUM AND ORDER

This is an action filed on behalf of D.A. ("D.A.") against the Wentzville R-IV School District (the "District"); Mary Ann Pomianek, the assistant principal of Wentzville Timberland High School; Edward Liliensiek, the principal of that school; and Shane Schlueter, a teacher at the school, alleging that all Defendants denied D.A. due process in six respects, in violation of 42 U.S.C. § 1983 (Count I); that all Defendants violated his rights under the Missouri Constitution and Mo.Rev.Stat. § 167.171 in four respects (Count II); and that Schlueter slandered D.A. (Count IV).[1] Equitable and monetary relief and punitive damages are sought.

Pending are D.A.'s[2] motion for partial summary judgment on the question of liability in Counts I and II and Defendants' motion for summary judgment on the entire complaint. [Docs. 19, 53, 25]

---

[1]Count III is a claim for a preliminary and permanent injunction expunging the disciplinary record of D.A. and other equitable relief.

[2]For ease of reference, the Court will refer to D.A. as though he was the plaintiff.

## Background

This action has its origins in D.A.'s suspension from school when he was a sophomore at Timberland High School ("Timberland").

In December 2005, D.A. learned from friends that a Timberline female student was accusing him of sexual misconduct. (D.A. Dep. at 46-47.) The next day, he informed Timberline counselor Janelle Whorle about the allegations and told her they were false. (Id. at 47-48, 51; Stip.[3] ¶ 1.) During the holiday break, D.A. was taken into custody, detained, and questioned by law enforcement officers regarding the original sexual misconduct allegations and also sexual allegations made by another female student. (D.A. Dep. at 67.) D.A. was questioned by juvenile authorities a second time in January 2006 and a third time in March 2006. (Stip. ¶¶ 3, 4.) The District was aware of these allegations and was aware that D.A. was under investigation by law enforcement authorities. (Pomianek Aff. ¶ 3.)

After D.A. told Whorle about the allegations, the District received complaints that students, including friends of D.A., were retaliating against the student who had made those allegations. (Id. ¶ 5.) D.A. was unaware of any such alleged retaliation. (D.A. Aff. ¶ 4.) Students were instructed not to discuss the matter at school, and schedules were adjusted so the students in conflict were not required to be in the same locations at the same time. (Stip. ¶ 9.) These interactions among the students caused substantial disruption to the school's operation. (Pomianek Aff. ¶ 7.) D.A. was unaware of these disruptions. (D.A. Aff. ¶ 10.)

---

[3]"Stip." refers to a party's statement of uncontroverted facts that is admitted by the opposing party.

The original complaining student withdrew from Timberland in February 2006. (Stip. ¶ 11.) The other alleged victims remained in school.[4] (Pomianek Aff. ¶ 9.)

Pomianek avers that the school resource officer notified her on April 11, 2006,[5] that D.A. was being charged with two counts forcible sodomy. (Pomianek Aff. ¶ 10.) She further avers that suspension was appropriate. (Id. ¶ 12.) On the other hand, Bonnie Thompson, the City of Wentzville police officer assigned to Timberland during the 2005 - 2006 school year as the school resource officer, avers that she was "unaware of any particulars" regarding D.A.'s criminal investigation and "at no time" did she "discuss specifics about D.A.'s case with any officials from the District." (Thompson Aff. ¶¶ 2-4.)

That same day, the District notified D.A.'s father, Richard Appelbaum ("Richard"), about D.A.'s suspension from the District. (Stip. ¶ 16.) D.A. had arrived at school late that day, but was present for all afternoon classes. (D.A. Aff. ¶ 6; Def. Ex. D; Stip. ¶ 14.) He was at school when Pomianek spoke with his father and informed him that D.A. was suspended pursuant to the Safe Schools Act, Mo.Rev.Stat. §§ 167.161-167.171. (D.A. Aff. ¶ 7; Pomianek Aff. ¶ 13.) Richard testified in his deposition that he knew everything that his son knew about the alleged incident when he received the telephone call from Pomianek. (Richard Dep. at 23.) He also testified, however, that he did not know what information D.A. had about the alleged incident at the time of the April 11 telephone call. (Id. at 75.) Pomianek avers that her decision to suspend D.A. was based on her belief that charges had

---

[4]There is some evidence that allegations against D.A. of sexual misconduct were made by two additional female students.

[5]The affidavit lists "2007" as the year; however, it is clear that "2006" was intended.

- 3 -

been filed against D.A. and based on her ongoing concern for the other students who were identified by law enforcement as victims of sexual misconduct by D.A. (Pomianek Aff. ¶ 12.) D.A. avers that at no time did District officials meet with him to inform him about the suspension, nor did the District afford him the opportunity to tell his side of the story. (D.A. Aff. ¶ 8.) D.A. also avers, however, that the only reason ever provided to him for why he was suspended was because of a violation of Mo.Rev.Stat §167.171. (Id. ¶ 11.) He was never advised of the District's concern for other students as a reason for his suspension. (Id.) D.A.'s mother, Roberta Appelbaum ("Roberta") understood that the District suspended D.A. based on information received from law enforcement authorities. (Roberta Dep. at 72.)

The initial period of suspension was for ten days, from April 12 though April 26. (Pomianek Aff. ¶ 15; Stip. ¶¶ 23, 24.) Richard spoke with Pomianek about the suspension and responded to the allegations and the alleged filing of a criminal petition. (Richard Dep. at 22, 26-28, 35-36, 74-55.)

By letter of April 13, the St. Charles County Family Court advised Superintendent Edward Katcher of the District that the court had received a report that D.A. had committed the offense of forcible sodomy, in violation of Mo.Rev.Stat. § 566.060. (Pl. Ex. 2.) By letter of April 17 and signed by Katcher, D.A.'s parents were advised by the District that they had received notice that a petition had been filed in the St. Charles County Juvenile Court alleging that D.A. had engaged in conduct amounting to forcible sodomy; that consequently D.A. was prohibited by law from enrollment in the District pursuant to Mo.Rev.Stat. §167.171.3(3); and that D.A. was not to be readmitted unless the charges were dismissed or reduced or unless he was acquitted. (Richard Dep. Ex. D.) By letter of April 18 from

Pomianek, D.A.'s parents were advised that D.A. was suspended from classes for a period of ten days beginning April 12, 2006, for the following reason: "Violations of Discipline Codes: 3600 – Violation – Safe Schools Act." (Id. Ex. E.) By letter of April 24 – the eighth day of D.A.'s suspension, the St. Charles County Family Court advised Katcher that a petition had been filed in that court charging D.A. with forcible sodomy. (Id. Dep. Ex. C; Stip. ¶¶ 29, 30.) By letter dated May 4, counsel for the Appelbaums requested a hearing on behalf of D.A. before the Wentzville Board of Education. (Richard Dep. Ex. F.)

By letter dated June 20, the St. Charles Family Court advised Katcher that the petition against D.A. "has been dismissed in family court in order to allow prosecution under general law." (Id. Dep. Ex. M.) At that time, D.A. had been suspended for a total of 36 days. (Def. Ex. D.) On June 30, counsel for the District sent correspondence to D.A.'s counsel stating that D.A. could re-enroll in the District schools. (Stip. ¶ 39.)

D.A. was never given a hearing by the District concerning the suspension either before or after it went into effect. (Pl. Ex. 6 at 4; Pl. Stip. ¶ 6.)

At all times relevant, Liliensiek was principal of Timberland. (Richard Dep. at 60.) Richard testified in his deposition that Liliensiek should have had knowledge of the events because he was Pomianek's supervisor; however, he also testified that he did not know whether Liliensiek had actual knowledge of the events, nor did he ever speak with Liliensiek about the events. (Id. at 61.)

Schlueter testified in his deposition that he never heard of the sexual misconduct allegations against D.A. until he learned of the instant lawsuit. (Schlueter Dep. at 11.) He further testified that he never took Nicole Jackson, another Timberline student, out of class

to discuss D.A. and never did discuss D.A. with her. (Id. at 11-12; 13-14.) Jackson avers that Schlueter never removed her from any class to talk about D.A. and never made any allegations of criminal conduct against D.A. (Jackson Aff. ¶¶ 3-10.) On the other hand, D.A. avers that Jackson told him in early 2006 that Schlueter had pulled her out of class and had asked her about D.A. and the sexual misconduct allegations. (D.A. Aff. ¶ 19.) Jackson avers that she does not remember talking to D.A. or Roberta about Schlueter. (Jackson Dep.. at 14.)

The averments of Jackson are contradicted by those of William Runge and Joseph Bramer, Jr., two private investigators retained by the Appelbaums' counsel. Runge avers that Jackson told him during an interview that Schlueter took her out of class and asked her questions about D.A. and his legal situation. (Runge Aff. ¶¶ 3, 4, 8.) Bramer avers that she told him the same information during their interview. (Bramer Aff. ¶¶ 3, 4, 8.)

It is the policy of the District that "[t]he School District Superintendent is the authorized representative and signature for all official matters pertaining to the School District." (Pl. Ex. 4 at [1].) It is also District policy that "[t]he Board affirms the rights and responsibilities of the building principals and directors for the administration of various programs and buildings within the broad scope of adopted Board policies, rules and regulations." (Id. at [2].)

## Discussion

Summary Judgment Standard. "Rule 56(c) [of the Federal Rules of Civil Procedure] 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" **Erenberg v. Methodist Hosp.**, 357 F.3d 787, 791 (8th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)) (alteration added). An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." **Hartnagel v. Norman**, 953 F.2d 394, 395 (8th Cir. 1992) (citations omitted). The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. See **City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.**, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts; see **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986); "rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit," **Webb v. Lawrence County**, 144 F.3d 1131, 1135 (8th Cir. 1998). "'Evidence, not contentions, avoids summary judgment.'" **Larry v. Potter**, 424 F.3d 849, 851 (8th Cir. 2005) (quoting Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1036 (8th Cir. 2005)). See also **Stanback v. Best Diversified Products, Inc.**, 180 F.3d 903, 909 (8th Cir. 1999) (finding general statements in affidavits and depositions are insufficient to defeat a properly supported summary judgment motion).

Count I: §1983 Claims Against District. Defendants first argue that D.A.'s claim in Count I against the District fails as a matter of law because he has failed to plead and demonstrate that the alleged unconstitutional acts occurred pursuant to a District policy or custom. D.A. specifically alleges that Defendants (including the District) violated his due

process by failing to (a) investigate the information received prior to suspending him; (b) provide oral or written notice of the charge against him; (c) meet with him and inform him of the suspension; (d) provide him with a hearing after suspending him; and (e) provide justification for suspending him. (Compl. ¶ 25.)

"The Due Process Clause of the Fourteenth Amendment is not a 'font of tort law.'" **Lee v. Pine Bluff School Dist.**, 472 F.3d 1026, 1029 (8th Cir. 2007) (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)). The Supreme Court has "emphasized time and again that '[t]he touchstone of due process is protection of the individual against arbitrary action of government.'" **County of Sacramento v. Lewis**, 523 U.S. 833, 845 (1988) (quoting Wolff v. McDonnell, 434 U.S. 539, 558 (1974)) (alteration in original). This is true whether the issue is "a denial of fundamental procedural fairness" or "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." **Id.** at 845-46 (citations and quotations omitted). Moreover, "the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in the constitutional sense." **Id.** at 847 (interim citations and quotations omitted).

When the challenged action is by a school district, the district may not be held liable under §1983 for due process violations unless the action is pursuant to an official policy or custom. **Lee**, 472 F.3d at 1031-32. A policy is defined as "an official policy, a deliberate choice or guiding principle or procedure made by an official with authority." **Shrum ex rel. Kelly v. Kluck**, 249 F.3d 773, 779 (8th Cir. 2001) (interim quotations omitted). Custom is defined "as a persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization." **Id.**

(interim quotations omitted). Additionally, § 1983 liability may be imposed for a single decision by policymakers under appropriate circumstances "because even a single decision by a [properly constituted] body unquestionably constitutes an act of official government policy." **Pembaur v. City of Cincinnati**, 475 U.S. 469, 480 (1986) (alteration added). Thus, the failure to specifically plead the existence of an unconstitutional policy or custom is not fatal to a §1983 due process claim. **Crumpley-Patterson v. Trinity Lutheran Hosp.**, 388 F.3d 588, 591 (8th Cir. 2004) (citing Doe vs. School Dist. of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003)).

Much of the evidence before the Court is in conflict. For instance, Pomianek avers that the school resource officer told her on April 11 that D.A. was being charged with forcible sodomy; the officer denies this. Roberta understood that her son was being suspended on April 11 because of information received from law enforcement officers. Pomianek cites an additional consideration for suspending D.A., her concern for other students and other potential victims; however, D.A., whose friends were allegedly involved in some of the conduct at issue, did not know of the underlying conduct.

What is not in conflict is the statutory provision that a pupil being suspended who denies the charges against him or her "be given an oral or written explanation of the facts which form the basis of the *proposed* suspension" and that the pupil then be given an opportunity to present his or her version of the incident. Mo.Rev.Stat. § 167.171.2(2) and (3) (emphasis added). The statute further provides for a hearing before the school board for a party appealing a suspension decision by a superintendent. Id. § 167.171.1. If there is such an appeal, the suspension is to be stayed pending the decision of the board except in

those cases where "the pupil's presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process." Id. § 167.171.2(4).

Section 167.171 is consistent with the United States Supreme Court's ruling in **Goss v. Lopez**, 419 U.S. 565 (1975). "Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." **Id.** at 581. In such a short suspension, an informal discussion with the school disciplinarian minutes after the events occurred will suffice. **Id.** at 582.

There is a genuine dispute whether D.A. was given the process required by statute and due process and whether this denial was due to a policy of custom of the District. Both motions for summary judgment will be denied on this point.

Count I: § 1983 Claims Against Liliensiek, Pomianek, and Schlueter. D.A. seeks recovery under § 1983 against these three individual defendants in their official and individual capacities for the five failures set forth above.

D.A. alleges no specific conduct by the Liliensiek, Timberline's principal, nor has he presented any evidence of any actionable conduct by Liliensiek, unconstitutional or otherwise, that would subject the principal to any liability. Richard testified that Liliensiek must have been aware of Pomianek's actions because he supervised her. "A supervisor may be held individually liable under § 1983 if he directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation."

**Brockinton v. City of Sherwood, Ark.**, 503 F.3d 667, 673 (8th Cir. 2007). "The standard of liability for failure to supervise is demonstrated deliberate indifference or tacit authorization of the offensive acts." **Id.** Richard testified that he did not know that Liliensiek had actual knowledge of the events of which the action is based. Pomianek made the telephone call to Richard and it was she who signed one of the letters for the District advising D.A.'s parents of the suspension. There is no evidence that Liliensiek had any information or involvement in this action. D.A.'s claims in Count I against Liliensiek are dismissed.

D.A.'s claims against Schlueter in Count I are also dismissed. In addition to there being no evidence of any involvement by Schlueter in the decision to suspend D.A. and in the procedure related to that decision and its enforcement, there is no allegation that he had any connection to Pomianek. These claims are also dismissed.

The § 1983 claims against Pomianek will not be dismissed. The evidence is clear that she made the telephone call to Richard to inform him of D.A.'s suspension on April 11, 2006, and signed the April 18 letter for the District advising D.A.'s parents about the ten-day suspension.

"A suit against a government official in his or her official capacity is 'another way of pleading an action against the entity of which the officer is an agent.'" **Baker v. Chisom**, 501 F.3d 920, 925 (8th Cir. 2007) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). In such a case, "'[t]he real party in interest in an official-capacity suit is the governmental entity and not the named official.'" **Id.** (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)). Because the Court has found that the District is a proper defendant in this action,

any judgment against Pomianek in her official capacity will result in a judgment against the District. Defendants' motion for summary judgment against Pomianek in her official capacity is denied.

A plaintiff may also assert a §1983 claim against a public official acting in his or her individual capacity. **Baker**, 501 F.3d at 923. Personal capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law." **Hafer**, 502 U.S. at 25. In such cases, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." **Id.** (interim quotations omitted). And, in personal capacity suits, a plaintiff is not required to establish a policy or a custom. **Id.**

In the instant case, D.A. clearly pleads specific allegations against Pomianek for actions taken by her in her individual capacity which allegedly violated D.A.'s due process rights.

Count II: Violation of § 167.171. D.A. alleges, in relevant part, as follows. He was told in December 2005 that another student at Timberline, a female, made sexual misconduct allegations against him. He reported this to a counselor and denied these allegations. During the winter school break, he was interviewed by law enforcement authorities and was later interviewed twice by juvenile authorities. The District was aware of this criminal investigation. Whether or not the investigation and allegations caused disruption at Timberland is disputed. There is disagreement in the record whether the school resource officer informed Pomianek that there were charges against D.A. And, there is confusion in the record whether Pomianek advised Richard in the April 11 telephone conversation that

D.A. was being suspended pursuant to the Safe Schools Act or because of concern for stability at the high school arising from the allegations. The Family Court April 13 letter advised the District that it had received a report of forcible sodomy against D.A. It was not until April 24 that the District received actual notice that a petition was filed against D.A. for those charges. No one at the District spoke with D.A. or gave him an opportunity to present his side of the story. After the petition was filed in family court, counsel for D.A.'s family wrote to Katcher and requested a hearing with the school board; a hearing was never conducted.

D.A. argues that these factual allegations give rise to three issue: (1) whether he was afforded an opportunity to explain his version of the incident following the suspension pursuant to Mo.Rev.Stat. §167.171.2(2) and (3); (2) whether the District was required to provide him a hearing on the suspension; and (3) whether his suspension was proper in that it began on April 12 yet a petition with the juvenile court was not filed until April 24.

Missouri Revised Statutes provide, in relevant part:

167.171. Summary suspension of pupil – appeal – grounds for suspension – procedure

1. The school board in any district . . . may authorize the summary suspension of pupils by principals of schools for a period not to exceed ten school days and by the superintendent of schools for a period not to exceed one hundred and eighty school days. . . .

2. No pupil shall be suspended unless:

(1) The pupil shall be given oral or written notice of the charges against such pupil;

> (2) If the pupil denies the charges, such pupil shall be given an oral or written explanation of the facts which form the basis of the proposed suspension;
>
> (3) the pupil shall be given an opportunity to present such pupil's version of the incident; and
>
> (4) In the event of a suspension for more than ten school days, where the pupil gives notice that such pupil wishes to appeal the suspension to the board, the suspension shall be stayed until the board renders its decision, unless in the judgment of the superintendent of schools, or of the district, superintendent, the pupil's presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process, in which case the pupil may be immediately removed from school, and the notice and hearing shall follow as soon as practicable.
>
> 3. . . . Notwithstanding any provision of this subsection to the contrary, no pupil shall be readmitted or enrolled to a regular program of instruction if:
>
> . . .
>
> (3) A petition has been filed pursuant to section 211.091, RSMo, alleging that the pupil has committed one of the acts enumerated in subdivision (4) of this subsection to which there has been no final judgment; . . .
>
> [(4)] (e) Forcible sodomy under section 566.060, RSMo;
>
> . . .
>
> Nothing in this subsection shall prohibit the readmittance or enrollment of any pupil if a petition has been dismissed, or when a pupil has been acquitted or adjudicated not to have committed any of the above acts. . . .

Mo.Rev.Stat. § 167.171 (alterations added).

As noted above, this statute is consistent with the holding in **Goss**, 419 U.S. at 581, that students facing temporary suspensions have certain due process rights. These rights include the opportunity for the student to present his or her side of the story, but stop short of requiring that the student be given the opportunity to secure counsel, to confront and

- 14 -

cross-examine the witnesses against the student, and to call his or her own witnesses in connection to a suspension of ten days or less. **Jennings v. Wentzville R-IV School Dist.**, 397 F.3d 1118, 1124 (8th Cir. 2005) (citing Goss, 419 U.S. at 583).

Aside from providing for the student to be told the underlying facts if he or she denies the charge and being given an opportunity to give his or her side of the story, "the statute contemplates that a summary suspension by a principal is to be treated absolutely apart from a separate suspension by a superintendent." **Reasoner by Reasoner v. Meyer**, 766 S.W.2d 161, 163 (Mo. Ct. App. 1989) (citing Mo.Rev.Stat. § 167.171). "The statute does not provide for an appeal of a suspension by a principal for ten days or less. Although any suspension must be reported to the superintendent, there is no provision for appealing a summary suspension by a principal of ten days or less to the school board or the courts." **Id.** In **Reasoner**, the principal imposed a ten-day suspension and recommended that the superintendent impose an additional ten-day suspension. **Id.** at 162. The court held that there is no restriction prohibiting both the principal and the superintendent from imposing separate ten-day suspensions for the same offense. It further held that if the principal explained the misconduct to the student, provided the student an opportunity to explain his version of the events, and contacted the parents to explain the incident, that these were sufficient procedures under the statute. **Id.** at 163, 164.

The facts in the instant case are in dispute and inconsistent. D.A.'s parents were informed on April 11 about the suspension, but there is a dispute about what reasons Pomianek gave. She avers that she was advised by the juvenile court that a petition against D.A. was filed on April 11, but the juvenile court did not actually notify the District about the petition

until April 24. D.A.'s parents received the April 11 telephone call, followed by a letter from the District's Superintendent on April 17, advising D.A.'s parents that D.A. was suspended indefinitely. This was followed by the letter of April 18 from Pomianek informing D.A.'s parents of a ten-day suspension. D.A. was never provided a hearing or a chance to explain his side of the story.

Missouri Revised Statute § 167.171.2(1), (2) and (3) provides for the student's right to explain himself, and, in a suspension of longer than ten days, a hearing is required if requested under § 167.171.1. However, under § 167.171.3(3), (4)(e), the District may not re-enroll a student charged with forcible sodomy.

Given the Missouri statutory provisions and the inconsistent factual allegations, the Court cannot grant summary judgment to either party on the claims in Count II focused on § 167.171.

D.A. also cites the Missouri Constitution as a basis for relief in Count II. He does not cite in his complaint, however, a specific section of the Missouri Constitution which Defendants are alleged to have violated.[6] Article I §10 of the Missouri Constitution provides for due process protection. The ruling in the section on Count I applies equally here.

D.A.'s motion for summary judgment on Count II will be denied. Defendants' motion will be granted as to Liliensiek and Schlueter and denied as to the District and Pomianek.

---

[6] In his response in opposition to Defendants' motion for summary judgment, D.A. cites Article IV § 1(9) of the Missouri Constitution; the Court is unable to locate this section.

Count IV: Slander Per Se. D.A. alleges in Count IV that Schlueter removed a fellow student of D.A.'s from class in February 2006, before any charges had been made, and alleged that D.A. had raped another student. (Compl. ¶¶ 43, 44, 45.)

Schlueter testified that he knew nothing about D.A.'s criminal case until this suit was filed and, therefore, never spoke to anyone about it. Although the student, Nicole Jackson, does not recall talking to D.A. about Schlueter, D.A. avers that he was told by her that Schlueter pulled her out of class and asked her questions about D.A.'s criminal case. On the other hand, Jackson avers that Schlueter never pulled her out of a class to talk with her about D.A. More importantly, she avers that Schlueter never made any statement to her about D.A.'s case. Two private investigators contradict Jackson's affidavit, each averring that she told them that Schlueter pulled her out of class and asked her questions about D.A.'s case. Conspicuously absent in all of this is any evidence that Schlueter made any statement about D.A. A question is not a statement.

In **Nazeri v. Missouri Valley College**, 860 S.W.2d 303, 313 (Mo. 1993) (en banc), the Missouri Supreme Court eliminated the distinction between slander *per se* ("false statements that the plaintiff was guilty of a crime, afflicted with a loathsome disease, or unchaste, or false statements that concerned the plaintiff's ability to engage in his or her occupation or business") and slander *per quod* ("words were not actionable as slander *per se*" and plaintiff was required to prove damages, unlike in slander *per se*). Therefore, a plaintiff needs only plead and prove defamation elements set out under Missouri law. **Boyd v. Schwan's Sales Enters., Inc.**, 23 S.W.3d 261, 264-65 (Mo. Ct. App. 2000). "Modern law combines libel and slander as the generic tort of defamation." **Id.** at 265 n.3. In this tort of defamation, a plaintiff must

establish: "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." **State ex rel. BP Products North America, Inc. v. Ross**, 163 S.W.3d 922, 929 (Mo. 2005) (en banc).

Resolving all disputed facts in favor of D.A., the facts nonetheless fail to establish a claim for defamation. Count IV will be dismissed.

<u>D.A.'s Requests for Preliminary Injunction and Punitive Damages</u>. D.A. seeks punitive damages from Pomianek, Liliensiek, and Schlueter in their individual and official capacities in both Counts I and II and against Schlueter in Count IV. Claims against Liliensiek and Schlueter will be dismissed, leaving the claims against Pomianek for punitive damages in her individual and official capacity.

"Because the burden of a punitive damages award in a judgment against a municipality ultimately falls on the taxpayers . . . punitive damages are not usually recoverable against a municipality in Missouri." **Kline v. City of Kansas City, Fire Dep't**, 175 F.3d 660, 669-70 (8th Cir. 1999) (citing Chappell v. City of Springfield, 423 S.W.2d 810, 814-15 (Mo. 1968)) (alteration added). "A municipality in Missouri is subject to punitive damages only if a statute specifically provides that it is." **Id.** at 670. In Missouri, school districts have been held to be municipal corporations for some purposes and not for others. **State ex rel. Lebanon School Dist. R-III v. Winfrey**, 183 S.W.3d 232, 235 n.2 (Mo. 2006) (en banc). Neither side provides authority for or against the District being subject to a punitive damages award.[7] As discussed

---

[7]Defendants cite **City of Newport v. Fact Concerts Inc.**, 453 U.S. 247 (1981) and **Mauzy v. Mexico School Dist. #59**, 878 F. Supp 153 (E.D. Mo. 1995), but neither case is

- 18 -

above, a judgment against a government official in his or her official capacity is considered to be a claim against a government entity. The Court will, therefore, not rule on D.A.'s claim for punitive damages against Pomianek in her official capacity at this time. He does plead sufficient facts to retain the claim for punitive damages against Pomianek in her individual capacity. To that extent, Defendants' motion for summary judgment is denied.

With respect to D.A.'s claim for injunctive relief, he seeks an order requiring the District to expunge his disciplinary record. The Court will address that issue, if necessary, after trial.

## Conclusion

For the reasons set forth above, the claims against Edward Liliensiek and Shane Schlueter are DISMISSED in their entirety. Count IV is also DISMISSED. Accordingly,

**IT IS HEREBY ORDERED** that the motion of Plaintiff for summary judgment is **DENIED**. [Docs. 19, 53]

**IT IS FURTHER ORDERED** that the motion of Defendants for summary judgment is **GRANTED** in part and **DENIED** in part as set forth above. [Doc. 25]

**IT IS FINALLY ORDERED** that the parties' joint motion to stay discovery is **GRANTED** insofar as the parties are granted sixty days from the date of this Order in which to complete discovery and is **DENIED** in all other respects. [Doc. 57] The parties are cautioned that this extension does not apply to the deadline for filing dispositive motions.

---

directly on point. D.A. cites no cases in support of his position.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of February, 2008.